UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Cr. No. 05-293 (RBW) |
| | : | |
| **TREVELL T. HICKS,** | : | |
| | : | |
| **Defendant** | : | |

**MOTION TO SUPPRESS EVIDENCE AND INCORPORATED MEMORANDUM**

Defendant, Trevell Hicks, through undersigned counsel, respectfully moves this Honorable Court to suppress as evidence against him at trial all tangible evidence seized by law enforcement agents as the fruit of an illegal stop, search, and arrest. This motion is made pursuant to Fed. R. Crim. P. 12(b)(3), and is supported by the discussion below. An evidentiary hearing on this motion is respectfully requested.

**STATEMENT OF FACTS[1]**

Mr. Hicks is charged in a one-count indictment with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).

According to Metropolitan Police Officer Scott Brown's written arrest report (hereinafter referred to as "P.D. 163"), members of the Major Narcotics Branch were conducting a narcotic "buy-bust" operation in the area of the 1800 block of Benning Road, N.E. During this operation, undercover police officers observed two people who appeared to be involved in a narcotic transaction. A lookout of these individuals was then broadcast by the undercover police officers.

---

[1] This statement of the facts is a summary based on the P.D. 163 police report. By including in this motion the facts as alleged by government witnesses, Mr. Hicks does not in any way concede that these facts are accurate or true.

According to the P.D. 163 these two individuals suspected of being involved in a narcotic transaction then separated from one another; one individual heading north on Benning Road and the other individual heading south on Benning Road.

Officer Brown, along with two other officers, pursued the individual who was heading south on Benning Road and "moved in to stop the subject."  As these officers "moved in" they observed this individual accompanied by Mr. Trevell Hicks.  Mr. Hicks was not one of the individuals suspected in a narcotics transaction.  Mr. Hicks was then stopped by Officer Brown and was asked if he had anything illegal on his person, to which he responded that he did not.  Officer Brown then conducted a pat down search of Mr. Hicks.  As a result of this pat down, Officer Brown allegedly recovered a .40 caliber semi-automatic pistol.

## ARGUMENT

### THE PHYSICAL EVIDENCE MUST BE SUPPRESSED AS THE TAINTED FRUIT OF MR. HICKS' ILLEGAL STOP.

The Fourth Amendment of the United States Constitution requires that all searches and seizures, including searches and seizures of the person, be "reasonable."  Vernonia School District 47J v. Acton, 515 U.S. 646 (1995).  In order for warrantless searches and seizures to be "reasonable," they must be supported by a limited exception to the warrant requirement, such as probable cause.  New Jersey v. T.L.O., 469 U.S. 325, 341-42 (1985).  In the instant case, the stop and arrest of Mr. Hicks not only were conducted without a warrant, but were not based on any other legitimate exception to the warrant requirement.  Mr. Hicks' stop, search, and seizure by the law enforcement officers were therefore unreasonable.  Exclusion of any evidence recovered as a result of this Fourth Amendment violation is the appropriate remedy.  Wong Sun v. United

States, 371 U.S. 471 (1963).

  A seizure occurs in one of two circumstances: (1) officers apply physical force to the individual, and/or (2) the individual submits to a show of authority by law enforcement officers. California v. Hodari D, 499 U.S. 621, 626 (1991). In order to seize an individual, officers must have either (1) probable cause to arrest the individual, see Michigan v. DeFillipo, 443 U.S. 31, 36 (1979), or (2) reasonable suspicion to conduct an investigatory stop, see Terry v. Ohio, 392 U.S. 1, 20-27 (1968).

  Officers can conduct an arrest when there exist "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." DeFillipo, 443 U.S. at 37. Officers can conduct an investigatory stop when they have reasonable suspicion, based upon articulable facts, that criminal activity "'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (citing Terry, 392 U.S. at 30). Because a stop cannot be justified by subsequent events, the founded suspicion must be based only upon those facts and circumstances known to the officers at the time of the stop. United States v. Patterson, 648 F.2d 625, 634 n.25 (9th Cir. 1981). The government bears the burden of adducing sworn testimony sufficient to satisfy this Court that the facts and circumstances known to the seizing officers at the time they stopped Mr. Hicks justified the stop. See Florida v. Royer, 460 U.S. 491, 500 (1983); United States v. Allen, 629 F.2d 51, 55 (D.C. Cir. 1980)

  In this case, evidence adduced at an evidentiary hearing will establish that Mr. Hicks' stop and seizure were unlawful and that there was no probable cause to support his arrest. The government will not be able to adduce sufficient sworn testimony to demonstrate that the MPD

officers possessed the requisite probable cause or reasonable suspicion to stop Mr. Hicks when they did. Specifically, the officers had no reason to impede, pursue and stop Mr. Hicks when they first observed him. Because the firearm was recovered after Mr. Hicks was illegally seized, the physical evidence must be suppressed as the tainted fruit of the illegal seizure. <u>Wong Sun</u>, 371 U.S. 471 (1963).

## **CONCLUSION**

For the foregoing reasons, and any other reasons that the Court may deem just and reasonable, Mr. Hicks requests that the Court suppress any evidence obtained by the officers as a result of his illegal arrest. Mr. Hicks respectfully requests an evidentiary hearing on this motion.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
Danielle C. Jahn
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Ste 550
Washington, D.C. 20004
(202) 208-7500