**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Criminal Case No. 05-293 (RBW)** |
| | **:** | |
| **TREVELL HICKS,** | **:** | |
| | **:** | |
| **Defendant** | **:** | |
| | **:** | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION TO COMPEL PRODUCTION OF**
***BRADY* AND *GIGLIO* MATERIAL**

The United States, by and through its attorney, the United States Attorney for the District

of Columbia, respectfully submits this opposition to Defendant's Motion to Compel the

Production of Brady and Giglio material ("Defendant's Motion" or "Motion"). In support of this

opposition, the United States relies on the following points and authorities and such other points

and authorities as may be cited at a hearing regarding these motions.

**I. BACKGROUND**

The Defendant is charged in a one count indictment with Unlawful Possession of a

Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a

Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).

At a hearing or trial in this matter, the Government expects the evidence for this charge to

demonstrate substantially as follows: On July 8, 2005, at approximately 5:40 pm, officers of the

Major Narcotics Branch (MNB) from the Metropolitan Police Department (MPD) were

conducting a "buy-bust" operation in the area of 1800 Block of Benning Road N.E., Washington

D.C. The officers believed that the Defendant and another individual were going back and forth

to a drug stash on the opposite side of the street.  The officers approached the two individuals.

The officers thought that the Defendant looked nervous, and asked him if he had anything on

him.  An officer then asked if he could pat the Defendant down for his safety, and the Defendant

made a sudden reach for his waistband.  The Defendant's hands were then secured, and then the

officers patted down the Defendant.  The officers recovered a .40 Hi-Point semi-automatic pistol

loaded with nine rounds of ammunition in the Defendant's  waistband. A subsequent W.A.L.E.S.

check indicated that the Defendant had a prior felony conviction for armed bank robbery, and,

that in fact, he had just been released from that federal incarceration within 24 hours of this

arrest.

The Defendant now seeks to compel the disclosure of "information concerning an MPD

Internal Affairs Division investigation of the . . . Major Narcotics Branch" on the grounds that

such information constitutes exculpatory and impeachment material pursuant to Brady v.

Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972) .  (Defendant's

Motion, p.1-2).  The basis of the Defendant's request for such information arises from the

publishing of a newspaper article reporting the existence of an administrative investigation by the

Internal Affairs Division (IAD) of the MPD into alleged problems with how the Major Narcotics

Branch logged and tracked property.  Nowhere in the news report cited by the Defendant, nor

within the Defendant's Motion, is there any allegation that the investigation by IAD involves

criminal conduct.

Furthermore, the undersigned counsel has conducted a search of the open investigative

files of the United States Attorney's Office related to misconduct by officers of the MPD, and

there is currently no investigation, criminal or otherwise, being conducted by the U.S. Attorney's

Office into the subject matter of the IAD investigation referenced in the Defendant's Motion. Furthermore, the U.S. Attorney's Office does not have access to any IAD files which may exist and which may relate to this investigation. Accordingly, the Defendant's Motion is without merit and should be denied.

## II. ARGUMENT

Pursuant to the Supreme Court's decision in Brady, the government is required to disclose to the defense evidence that is favorable to the Defendant, and material to guilt or punishment. Brady 373 U.S. at 87. Impeachment evidence challenging the credibility of government witnesses generally falls within the rules of disclosure set forth in Brady. Giglio 405 U.S. at 154.

In United States v. Brooks, 966 F.2d 1500, 1503 (1992), the D.C. Circuit held that in certain instances, the government's obligations under Brady require the United States Attorney's Office to search the files of the MPD's Internal Affairs Division. The Brooks court addressed the issue of when the government's duty to search such files is triggered, stating that "[w]here the files' link to the case is less clear, the court must also consider whether there was enough of a prospect of exculpatory materials to warrant a search." Id. The court held that no such duty upon the government exists where the request for exculpatory materials is based on *pure speculation*. Id. (emphasis supplied). In the Brooks case, the court found that there was a duty to search the MPD's files, where at a retrial the government introduced the transcribed testimony of an officer who had testified in the first trial, but who had been killed with her own service revolver while in the presence of another police officer before the retrial began. In requiring the government to conduct a search of the IAD and homicide files related to the officer's death, the

court noted that while the probability was low that such files would yield any information on the

dead officer's credibility, the request by the defendant was "above the range of utter speculation"

given the circumstances surrounding her death and the link with her employment.   Id.

Consistent with the approach of the D.C. Circuit in Brooks, other circuits have denied

requests for disclosure of agency files based upon a claim that the files may contain Brady

materials, where such claims are based upon pure speculation.  United States v. Navarro, 737

F.2d 625, 630-31 (7th Cir. 1984) (rejecting as a "mere shot in the dark" a claim by defendant that

the government should have checked the file of a government witness in possession of the

Immigration and Naturalization Service on the theory that the file would contain information

about a deal between the witness and the INS); See Riley v. Taylor, 277 F.3d 261, 301 (3rd Cir.

2001) (defendant seeking in camera inspection of government files to determine whether the files

contain Brady material must make at least a plausible showing that the inspection will reveal

material evidence, mere speculation is not enough); United States v. Pou, 953 F.2d 363, 367 (8th

Cir. 1992) (holding that mere speculation that a government file may contain Brady material is

not sufficient to require remand for in camera inspection).

In support of its decision to require the government to search the IAD and homicide files,

the Brooks court also noted that the defense counsel's request "pinpointed" files that could be

searched without difficulty, as opposed to a request which would require the government to

examine large volumes of files.  Brooks , 966 F.2d at 1503.

By contrast, in the instant matter, the Defendant's request for information relating to the

IAD investigation into the MNB's tracking of property does not meet any of the criteria set forth

in Brooks.  The Defendant's Motion is devoid of any assertions on how he believes the requested

information would produce exculpatory or impeachment materials, nor how this information is

linked to the particular facts of his case.  Accordingly, the Defendant's Motion amounts to

nothing more than a "fishing expedition" in its claim that the requested information will contain

exculpatory or impeachment material.  Furthermore, the Defendant's Motion makes the sweeping

request that this Court order the Government to produce "all discoverable materials concerning

the MNB investigation." (Defendant's Motion, p.4).  This request lacks any of the specificity

discussed in Brooks, and appears more calculated as a device designed to obtain materials not

otherwise discoverable under the rules of criminal procedure.  Navarro 737 F.2d at 631 (stating

that requiring prosecution to turn over files based upon "mere speculation would convert Brady

into a discovery device and impose an undue burden upon the district court").

Finally, the Defendant also fails to articulate how materials related to the IAD

investigation would tend to demonstrate bias in favor of the Government on the part of any MNB

officers.  As stated above, the U.S. Attorney's Office is not involved in the IAD investigation,

does not have access to these files, and is not conducting an investigation of its own into these

matters.  Accordingly, there can be no credible claim of bias by MNB officers in favor of the

Government as a result of the IAD investigation.

WHEREFORE, for the reasons stated above, the United States respectfully

submits that the Defendant's Motion to Compel Production of <u>Brady</u> and <u>Giglio</u> Material be

denied.

                               Respectfully submitted,
                               KENNETH L. WAINSTEIN
                               United States Attorney
                               D.C. Bar Number 451058

BY:                   _____

                               CARLOS F. ACOSTA
                               Special Assistant United States Attorney
                               D.C. Bar Number 443373
                               Organized Crime and Narcotics Section
                               555 4th Street, N.W.  #4108
                               Washington, DC 20001
                               (202) 514-4922; Fax: (202) 353-9414