UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Case No. 05-293 (RBW) |
| | : | |
| TREVELL HICKS, | : | |
| | : | |
| Defendant | : | |
| _____ | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE AND INCORPORATED MEMORANDUM**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to deny Defendant's Motion to Suppress Evidence in the above-captioned case. In support of this motion, the Government relies on the following points and authorities and such other points and authorities that may be adduced at a hearing on the matter:

**BACKGROUND**

1. The Defendant is charged in a one count indictment with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).

The Defendant was previously convicted in United States District Court for Baltimore, MD in Criminal Case #98-286-03 of two crimes:

1. Armed Bank Robbery (Aiding & Abetting), and

1. Use / Carry a Firearm in Crime of Violence. He was sentenced on April 21, 1999 to 30 months incarceration for the crime of Armed Bank Robbery conviction, and 60 months for the crime of Use / Carry a Firearm in Crime of Violence. Once he had served his period of incarceration, he was to be placed on supervised release for 5 years. The Defendant was released from federal incarceration and began his supervised release July 8, 2005. He was arrested in this matter that same day at approximately 5:40 P.M. near 1839 Benning Road, NE..

2. At that time and place, members of the Major Narcotics Branch were doing buy-bust operations when they observed the Defendant and another individual, dressed similarly in a black shirt, moving back and forth across the opposite side of the street. Using their knowledge and expertise, the officers determined this was consistent with two drug dealers moving back and forth to a drug stash on the opposite side of the street. Drug dealers commonly stash drugs a short distance from their person to avoid having the drugs linked to them in the event of arrest.

3. Detective Brown first approached the Defendant and asked if the Defendant had anything illegal on him. The Defendant replied he did not, but acted nervous. Detective Brown asked if the Defendant would consent to a search, but the Defendant said, "I'm not doing anything."

4. At this point, the Defendant made a sudden reach for his waistband and Detective Brown, with the help of Officer Gheen, secured the Defendant's hands and they patted him down and recovered a .40 caliber Hi-Point semi-automatic pistol loaded with nine rounds of ammunition.

**ARGUMENT**

**Detective Brown Executed a Lawful Stop-and-Frisk Under <u>Terry v. Ohio</u>**

There are two distinct periods of police engagement in this case. First, Detective Brown approached the Defendant in order to investigate possible criminal activity based on a reasonable, articulable suspicion and asked questions designed to gather information as quickly and least intrusively as possible (Part I).  Second, after the Defendant made a furtive movement, Detective Brown and Officer Gheen engaged in a reasonable search for weapons in order to protect their safety (Part II).

**I.  Detective Brown Lawfully Approached the Defendant to Investigate a Possible Crime in a Quick and Unintrusive Manner**

An officer may stop and engage a person for the purposes of investigation based on any reasonable, articulable suspicion.  <u>Terry v. Ohio</u>, 392 U.S. 1, 20 (1968) (repetitive movements back and forth in front of a jewelry store consistent with "casing" it for a robbery); <u>see also</u> <u>U.S. v. Cook</u>, 277 F.3d 82 (1st Cir. 2002)(two persons, with arms extended as if exchanging something, who rapidly separate when police car approaches).  Courts examine whether the officer conducting the stop had a reasonable suspicion of criminal activity under the totality of the circumstances.  <u>Id.</u>

After engaging in a "stop," an officer may inquire into anything reasonably related in scope to the justification for its initiation. <u>U.S. v. Brignoni-Ponce</u>, 422 U.S. 873, 881 (1975)(may question about carrying illegal immigrants if stop was reasonable); <u>U.S. v. Cook</u>, 277 F.3d 82 (1st Cir. 2002)(may ask defendant if he has anything of which the police should be aware).  A short detention meets the constitutional standard of reasonableness where the officer diligently pursues his or her investigation and no delay or intrusion unnecessary to the investigation is

involved.  U.S. v. Sharpe, 470 U.S. 675 (1985)(permitting 20-minute traffic stop to investigate drugs); Florida v. Royer, 460 U.S. 491, 498 (1983)(permitting questioning about drugs of an airline passenger with suspicious luggage).  "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen."  Royer, 460 U.S. at 497 (finding, however, police had made an actual arrest and thus exceeded their authority under Terry v. Ohio).

Detective Brown's "stop" in this case are virtually identical to Terry v. Ohio.  Like Officer McFadden in Terry, Detective Brown was discharging the "legitimate investigative function" of "approach[ing] a person purposes of investigating possibly criminal behavior."  Terry, 392 U.S. at 22.  Like the Terry defendants that repeatedly passed in front of a store window, the Defendant in this case displayed unusual movements back and forth across the street consistent with criminal intent (here, selling drugs).  Detective Brown was fully justified in approaching the Defendant.

Furthermore, Detective Brown's questioning was calculated to be as direct and non-intrusive as possible.  As the police did in Brignoni-Ponce, Cook, Royer, and Sharp, Detective Brown immediately asked questions pertaining to the purpose of his investigation.  In fact, it is difficult to imagine a simpler and more directly relevant question than whether the Defendant was carrying anything illegal.   And unlike Royer, Detective Brown made no attempt to remove the Defendant from a public place.  Therefore, Detective Brown could "not [have] violate[d] the Fourth Amendment by merely approaching an individual on the street . . . [and] by putting questions to him if the person is willing to listen."  Royer, 460 U.S. at 497.

**II.    Detective Brown and Officer Gheen Made a Lawful Frisk Pursuant to a Drug Stop, Especially in Light of Defendant's Threatening Movements**

The Fourth Amendment does not denounce all searches or seizures, but only such as are unreasonable. Carroll v. U.S., 267 U.S. 132, 147 (1967).  When a police officer is justified in believing that the individual whose suspicious behavior the officer is investigating is armed and presently dangerous, the officer may conduct a patdown search without a warrant on the basis of a reasonable suspicion.  Minnesota v. Dickerson, 508 U.S. 366, 373 (1993)(may look for weapons pursuant to a drug stop); Terry v. Ohio, 392 U.S. at 22 (may look for weapons pursuant to preventive stop to frustrate a robbery).  The reasonableness of police conduct is adjudged under the totality of the circumstances. Id. at 20.

The Defendant was stopped on a reasonable, articulable suspicion of dealing drugs, and dealers often carry guns.  This alone would offer justification for the Detective Brown's search and discovery of the Defendant's semiautomatic pistol, had not other circumstances made this a clearer case.  The Defendant acted visibly nervous to the police officers, and most importantly, he made a furtive movement toward his waistband after being questioned.  This is by far an easier case than Terry itself, where Officer McFadden immediately frisked one suspect upon his approach without ever speaking a word.  In this case, Detective Brown asked the Defendant questions, observed his response, and made a frisk pursuant to officer safety once it became obvious that immediate action was required.

WHEREFORE, the Government respectfully requests this Court to deny Defendant's Motion to Suppress Evidence and Incorporated Memorandum.

                                            Respectfully submitted,
                                            KENNETH L. WAINSTEIN
                                            United States Attorney
                                            D.C. Bar Number 451058

BY:

                                            CARLOS F. ACOSTA
                                            Special Assistant United States Attorney
                                            D.C. Bar Number 443373
                                            Organized Crime and Narcotics Section
                                            555 4th Street, N.W.  #4108
                                            Washington, DC 20001
                                            (202) 514-4922;  Fax: (202) 353-9414